IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS SHIDLER, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1485-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 17), this case has been transferred to the undersigned for final ruling. For the reasons discussed herein, Plaintiff's *Motion for Summary Judgment* (Doc. 21) is **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 26) is **DENIED**.

**I. BACKGROUND**[1]

**A.    Procedural History**

Dennis Shidler seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB) under the Social Security Act. In May 2008, Plaintiff filed for DIB, claiming that he had been disabled since May 2008 due to stomach pain, bladder cancer, possible colon cancer, diabetes, high blood pressure, diverticulitis, and emphysema. (Tr. at 42, 50, 165, 194). His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

(ALJ). (Tr. at 49-51, 64-65). He personally appeared and testified at a hearing held in June 2009. (Tr. at 3). In August 2009, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 45). In June 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 32-34). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.      Factual History**

    **1.      Age, Education, and Work Experience**

Plaintiff was 59 years old at the time of the administrative hearing and had a general equivalency diploma. (Tr. at 4, 171). He had past relevant work history as a courier and truck driver. (Tr. at 20-21).

    **2.      Medical Evidence**

The record shows that Plaintiff suffers abdominal pain, diabetes, hypertension, degenerative disc disease, and syncopic episodes (loss of consciousness and postural tone caused by diminished cerebral blood flow).[2] Plaintiff's abdominal pain began in 2006, and he described the pain as sharp and piercing. (Tr. at 705). The pain worsened throughout 2007, becoming constant, and was aggravated by eating and movement. (Tr. at 285, 705.) In November 2007, Plaintiff went to the hospital for severe abdominal pain, and the doctor believed he was suffering from moderate sigmoid diverticulosis (pouches in the intestine) and constipation. (Tr. at 348-50, 357-59).

---

[2] Medical terms have been defined by reference to *Stedman's Medical Dictionary*, available on Westlaw.

In January 2008, Plaintiff went to the emergency room for abdominal bloating and pain, and the doctor informed him that he may have gastric slowing complicating his diabetes. (Tr. at 525, 527). It was noted at that time that Plaintiff had undergone multiple x-rays and CT scans for his abdominal pain, but there was no "definitive diagnosis." (Tr. at 529). In February 2008, he went to the hospital for gastric emptying due to constipation. (Tr. at 522). In March 2008, Plaintiff was admitted to the hospital for a week due to hypertension urgency, weakness and numbness in his left arm and the right half of his face, resulting in facial assymetry, and he also was suffering from abdominal pain. (Tr. at 280, 284, 289). Plaintiff had narrowing of 25% of the left carotid artery and was diagnosed with Bell's palsy (paralysis of the facial muscles). An imaging study of his abdomen revealed significant celiac (abdominal cavity) artery blockage and celiac artery stenosis, and it was surmised that his chronic abdominal pain was likely due to long-standing constipation. (Tr. at 280-81, 283, 371).

Plaintiff's colonoscopy revealed that his abdominal pain was possibly related to diverticulosis with apparent diverticulitis (inflammation of the diverticulum pouches of the colon which fill with fecal matter and become inflamed). An imaging study in March 2008 showed abnormality and occlusion of the celiac artery, which had definitely changed compared to Plaintiff's prior CT scan from November 2007. (Tr. at 283, 285, 316, 337-40, 392). In April 2008, Plaintiff underwent an upper GI endoscopy, the results of which were normal. (Tr. at 291). A duodenal biopsy and gastropathy performed around the same time revealed that Plaintiff's duodenum (first division of the small intestine) was mildly inflamed. Additionally, he had peptic duodenitis (inflammation of the duodenum) and mild chronic gastritis (mucosal inflammation of the stomach). (Tr. at 298).

Plaintiff went to the emergency room for abdominal pain again in April 2008 and was noted as having a very firm, distended abdomen. The doctor's impression was that he had non-specific air-fluid levels and constipation, and a CT scan revealed that a short loop of his bowel was mildly dilated. (Tr. at 266, 270-71, 274). In May 2008, Dr. Edie Stephanian, who Plaintiff consulted about abdominal pain, stated that she had evaluated him for vascular surgery and did not think that his pain was related to his circulation. (Tr. at 459).

Plaintiff was successfully treated for bladder cancer in June 2008. (Tr. at 466, 483-84). A chest x-ray from June 2008 revealed that Plaintiff had mild chronic obstructive pulmonary disease (COPD) and mild pulmonary fibrosis, and he acknowledged smoking a pack of cigarettes a day. (Tr. at 478, 505). In July 2008, Plaintiff went to the emergency room complaining of abdominal pain again. (Tr. at 556).

In August, September, and November 2008, and again in March 2009, Plaintiff was taken by ambulance to the emergency room after he collapsed from seizures and lost consciousness. He was diagnosed as syncopic with some prior fainting episodes associated with hypoglycemia, hypotension, and multiple contractures of his extremities. (Tr. at 504, 510, 574, 577, 594, 600, 603, 640). During his September 2008 hospital stay, Plaintiff was noted as having full strength in all his muscle groups and extremities and normal muscle tone, and he had a normal tiptoe, heel, and casual gait. (Tr. at 638). It was also noted in that timeframe that he could climb a flight of stairs with a bag of groceries and was smoking a pack of cigarettes a day, which he had done for 42 years, but his respiration and lung sounds were normal. (Tr. at 651-52, 656). In November 2008, Plaintiff was advised not to drive until he had seen and been cleared by a neurologist. (Tr. at 603-04).

In August 2008, and again in June 2009, Plaintiff's treating physician, Dr. James Mullowney, completed a Residual Functional Capacity (RFC) questionnaire, stating that Plaintiff (1) was unable to work due to pain, weakness, syncopal episodes, and weight loss, (2) could never bend, squat, climb, reach up or kneel, (3) had severe pain, (4) frequently needed to rest during the day, (5) would frequently miss work, and (6) had a condition that was getting worse although the cause was unknown. (Tr. at 570-72).

In September 2008, an MRI revealed that Plaintiff had moderately severe narrowing in the lumbar spine at L3-L4, a bulging disc at L4-L5, and degenerative disc disease in multiple areas, and he was referred for an orthopedic evaluation. (Tr. at 657, 659, 693). He was able to walk 80 feet. (Tr. at 689). Plaintiff also had exploratory surgery on his abdomen, which revealed no visible problems, although he was diagnosed with chronic cholecystitis (inflammation of his gallbladder, which was removed) and biliary dyskinesia (difficulty in performing voluntary movements of the biliary tract and the sphincter of hepatopancreatic ampulla). (Tr. at 659, 757).

His doctor noted that since early 2008, Plaintiff had developed bilateral lower extremity weakness (worse on the right side), had severe neuropathy in both legs, and used a cane at home. (Tr. at 705-06, 758). He was unable to sit in a chair, lie in bed, or sit in a car for a prolonged period of time due to his severe back pain. (Tr. at 705). Plaintiff stated that the onset of his seizures was related to the use of oxycodone that his internist gave him for back pain. (Tr. at 706). His doctor stated that Plaintiff's abdominal pain did not consistently fit any pattern or disease that he could readily identify, but the doctor suspected that a lot of Plaintiff's problem was related to his underlying diabetes and autonopathy. (Tr. at 707).

3.  **Hearing Testimony**

At the administrative hearing, a medical expert (ME) testified that Plaintiff's record contained a "variety of complaints" and was a "terrible case to analyze." (Tr. at 4). He stated that Plaintiff suffered from abdominal pain of unknown origin, bladder cancer, fairly frequent syncopal episodes, COPD, Bell's palsy, and ventricular hypertrophy. (Tr. at 4-5). The ME also interpreted the opinion of Dr. Mullowney from August 2008 regarding Plaintiff's limitations as not based on a medically determinable impairment. (Tr. at 5). Although queried by the ALJ as to what Plaintiff's RFC was, the ME merely stated that his medically determinable impairment was not clear. (Tr. at 5-7). The ME also stated that Plaintiff's syncope could effectively be treated if Plaintiff laid down when he felt nauseated so that he would avoid losing consciousness. (Tr. at 8-9).

Plaintiff testified that he mainly could not work due to his syncopal episodes because he was afraid to drive. (Tr. at 10-12). He further testified that his COPD caused shortness of breath on warm days, he had back spasms three to five times a day, which rated eight or nine on a pain scale of ten, and constant back pain of four on the pain scale. (Tr. at 10-11). Plaintiff noted that his abdominal pain was constantly at a level of three, but if he moved the wrong way, would increase to eight. (Tr. at 12). Plaintiff also testified that he could not sit in a hard chair for more than 25 minutes or stand for more than 15 minutes, and that he could walk only a quarter of a block, lift only a gallon of milk, and could squat, climb stairs, and kneel only with pain. (Tr. at 13-14). He stated that his previous job as a courier required that he lift packages that weighed, on average, 20 to 25 pounds, and since November 2008, he had been using a walker his mother had given him to walk long distances due to weakness in his legs caused by muscle loss

stemming from his diabetes. (Tr. at 10, 14, 19).

Plaintiff stated that he took his dogs out, made coffee, fed his dogs, watched TV, worked on a model car for about an hour a day, and tried to help his daughters prepare dinner, but he had to sit on a stool to shower and take frequent breaks when he became tired, out of breath, and his back hurt. (Tr. at 15-17). His son-in-law recently took him fishing, during which Plaintiff sat on the dock, but ultimately had to get back into the car. (Tr. at 18).

A vocational expert (VE) testified that a hypothetical individual who could lift 20 pounds occasionally and 10 pounds frequently, could sit, stand, and walk for six hours, and never climb ladders or ropes, could perform Plaintiff's past relevant work as a courier, which he classified as light, unskilled work. (Tr. at 20-21). The VE also stated that if an individual had the limitations opined by Dr. Mullowney, that person could not maintain competitive employment. (Tr. at 21). The VE testified that the jobs he had classified as past work were consistent with DOT regulations. (Tr. at 21-22). Upon examination by Plaintiff's attorney, the VE stated that a courier would be able to work with a walker insofar as the Plaintiff's previous courier position had involved sitting for five hours out of the workday. (Tr. at 22).

C. **The ALJ's Findings**

In August 2009, the ALJ issued an unfavorable decision. (Tr. at 45). At step one of the sequential disability analysis found in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 2008. (Tr. at 42). At step two, the ALJ found that Plaintiff's diabetes mellitus, history of syncope, and degenerative disc disease were severe impairments as defined by the Social Security Act. (Tr. at 42). The ALJ noted that Plaintiff's abdominal pain was not a medically determinable impairment because no medical diagnosis had

7

been made, and subjective complaints of symptoms must be substantiated by objective medical signs and findings. (Tr. at 42). At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the disabling severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 43).

Before moving to step four in the analysis, the ALJ assessed Plaintiff's RFC and determined that he could lift up to 20 pounds, carry 10 pounds frequently, and stand, sit and walk for six hours out of an eight-hour work day, but not climb ropes or ladders. (Tr. at 43). The ALJ found that Plaintiff's statements about his limitations were not credible to the extent his testimony about his symptoms was inconsistent with the ALJ's RFC. (Tr. at 43). The ALJ rejected Dr. Mullowney's RFC because the doctor had listed symptoms, but determined that the cause of them was unknown. (Tr. at 44). Given the ALJ's RFC finding and his findings regarding the physical demands of Plaintiff's past relevant work, the ALJ found at step four that Plaintiff could perform his past relevant work as a courier. (Tr. at 45). Therefore, the ALJ found Plaintiff was not disabled under the meaning of the Act. (Tr. at 45).

## II. ANALYSIS

A. **Legal Standards**

1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a

reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The relevant law and regulations governing the determination of disability under the SSI program are identical to those governing the determination of eligibility under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *Id. passim.*

### 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.    Issues for Review**

Although the Court need not address all of the issues in reaching a decision in this case, as will be discussed more fully below, the issues Plaintiff presents are as follows:

1. Whether the ALJ improperly rejected Plaintiff's severe abdominal pain as a non-medically determinable impairment

2. Whether the ALJ improperly rejected the treating physician's opinion

3. Whether the ALJ's RFC failed to take into account all of Plaintiff's medically determinable impairments

4. Whether the VE's testimony is contrary to the Dictionary of Occupational Titles and Plaintiff's testimony as to the job demands of his past work

As to the first issue, Plaintiff argues that a medically determinable impairment can be shown through "symptoms, signs, and laboratory findings" and does not require a definitive diagnosis. Plaintiff contends that "[n]either the Social Security Act nor the regulations require that his 'medically determinable impairments' be either formally diagnosed or that such diagnosis be 'confirmed.'" (Doc. 21-1 at 9). Further, Plaintiff contends that, while the cause of his abdominal pain has not been definitively discovered, the pain is itself a diagnosis that has been given by his doctors who have objectively observed his condition and symptoms. Therefore, the ALJ's rejection of Plaintiff's abdominal pain was error, which prejudiced him because it was the main subject of his medical records, a condition upon which his doctor based his RFC assessment, and one of the main reasons Plaintiff testified he could not work. (*Id.*).

The government responds that the ALJ did give adequate reasons for not finding Plaintiff's abdominal pain to be a medically-determinable severe impairment because there was no medical diagnosis for the abdominal pain, and multiple negative test results support the ALJ's

11

conclusion that Plaintiff's allegations of abdominal pain were merely subjective complaints. (Doc. 27 at 6).

The ALJ must consider all medically-determinable impairments of which he is aware when making his RFC finding. 20 C.F.R. § 404.1545(a)(2). The RFC is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 404.1520(f).

A "medically determinable" impairment is

> an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). An ALJ may find that no medically-determinable impairment exists if the claimant has never received any medication or treatment for the alleged impairment; a claimant's subjective complaints about the existence of such impairments are insufficient to establish an impairment. *Cook v. Astrue*, 2010 WL 4628732 *4 (N.D. Tex. Nov. 15, 2010). A definitive diagnosis, however, is not required. *Schriner v. Commissioner*, 2010 WL 2941120 *13 (N.D. Tex. June 22, 2010); *Mahoney v. Astrue*, 2009 WL 3097334 *9 (N.D. Tex. Sept. 25, 2009).

Although in this case there has been no firm diagnosis as to the definite cause of Plaintiff's abdominal pain and some of his test results have been normal, there is nevertheless

ample objective medical evidence to support his complaints about the existence and possible causes of the pain. In particular, Plaintiff has been diagnosed with a number of illnesses that could explain his abdominal pain, including diverticulitis, celiac disease, and gastritis.[3] Thus, Plaintiff's physical impairment is demonstrable by medically acceptable techniques, and is not just based on Plaintiff's statement of his symptoms. 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508.

Based on the ALJ's failure to treat Plaintiff's abdominal pain as a medically-determinable impairment, the ALJ did not take the pain into consideration in formulating his RFC finding for Plaintiff. Had the ALJ properly considered Plaintiff's abdominal pain as a medically-determinable impairment, it is possible that his overall findings and disability determination would have been different, demonstrating that prejudice occurred from the ALJ's error at step 2 of the proceedings. In particular, Plaintiff's abdominal pain was one of the most substantial aspects of his medical records, was a condition that his treating physician relied on in determining Plaintiff's RFC, and was one of the reasons Plaintiff testified he could not work. Accordingly, this case must be reversed and remanded for further proceedings.

Because the Court is remanding this case based on the ALJ's failure to consider Plaintiff's abdominal pain as a medically determinable impairment, there is no need for the Court to address the remaining issues, which will likely be affected by the ALJ's reconsideration of Plaintiff's RFC on remand. Nevertheless, the undersigned does note that, at a minimum, a preliminary review of Issue 2 suggests that Plaintiff's argument may be meritorious. *See Newton*

---

[3] Information about the symptoms of these diseases was located on the Mayo Clinic website. www.mayoclinic.com.

*v. Apfel*, 209 F.3d 448, 453, 455-56 (5th Cir. 2000) (holding that an ALJ may reject a treating physician's opinion only after performing the six-step analysis in 20 C.F.R. § 404.1527(d)(2), unless the treating physician's opinion is conclusory, unsupported, or contradicted by another treating doctor).

### III.   CONCLUSION

For the foregoing reasons, the undersigned **GRANTS** Plaintiff's *Motion for Summary Judgment* (Doc. 21) as set forth herein and **DENIES** Defendant's *Motion for Summary Judgment* (Doc. 26).

**SO ORDERED** on March 24, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE